IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) Case No. 01-cr-532 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| Robert Bronke, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is the government's amended motion to clarify the seven judgments entered between 2003 and 2007 in this criminal case. ECF No. 397. The motion stems from defendant Robert Bronke's ("Bronke") 2021 request to the U.S. Attorney's Office for a payoff amount for his joint and several restitution obligation to First Tennessee Bank. *See* Gov't Reply 2, ECF No. 435. As permitted by federal statute, the Clerk of Court processes, accounts for, and distributes restitution payments. *See* 18 U.S.C. § 3611; 28 U.S.C. § 604(a)(18); *but see* 28 C.F.R. § 0.171(e)(4) (permitting the U.S. Attorney to "accept delivery of the amount or property due as restitution"). In the instant motion, the government disagrees with the Clerk's method of accounting for partial payments toward joint and several restitution obligations. *See, e.g.*, Gov't Reply 2–3.

The Clerk has appeared and filed a thorough response brief opposing the government's motion for clarification, arguing that he will be injured substantially if the motion is granted because the accounting method for potentially tens of thousands of transactions in this district involving restitution payments may need to be revisited if the court agrees with the government, to say nothing of transactions in other districts that use the same accounting software provided by the Administrative Office of the United States Courts. *E.g.*, Clerk's Resp. to Am. Mot. to

Clarify Restitution Order ("Clerk Resp.") 20, ECF No. 420; Gov't Reply 2. The government does not object to the Clerk's participation. Gov't Reply 4 n.5. Neither Bronke nor First Tennessee Bank has appeared to oppose the motion to clarify. Two of Bronke's co-defendants, Arnie Gillard and Dawn Raimo Whitemiller, now known as Dawn Sambalis, appeared and adopted the Clerk's arguments for denying the motion. Sambalis's Resp. to Am. Mot. to Clarify Restitution Order ("Sambalis Resp.") 2, ECF No. 425; Gillard's Resp. to Am. Mot. to Clarify Restitution Order ("Gillard Resp.") 1, ECF No. 426; *see also* Sambalis Resp. 3 (making additional arguments on the merits). For the following reasons, the court cannot reach the merits of the disagreement over accounting methodology because, as the Clerk argues, the government has not carried its burden to show that this court has jurisdiction to rule on its motion to clarify.

## I. Background

The seven judgments entered between 2003 and 2007 in this criminal case required defendants to pay restitution to First Tennessee Bank in amounts ranging from approximately $221,000 to $4.2 million. Each judgment holds one of the defendants jointly and severally liable with one or more of the others for the restitution amount stated.[*] *See* ECF No. 100 at 6–7; ECF No. 101 at 6–7; ECF No. 135 at 6–7; ECF No. 217 at 5; ECF No. 227 at 5; ECF No. 236 at 5; ECF No. 259 at 5. The "joint and several" language appears in the judgments (and in many other judgments in criminal cases over the years), and neither the government nor any defendant objected to this aspect of the judgments at the sentencing stage.

At common law, joint and several liability attaches where a victim has suffered a single, indivisible harm. *See Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017) (citations

---

[*] In addition to First Tennessee Bank, defendant Mark Schmitt's judgment orders him to pay $382,088 in restitution to the Department of Housing and Urban Development jointly and severally with the defendants in case no. 01-cr-261. ECF No. 135 at 6–7.

omitted); *Bosco v. Serhant*, 836 F.2d 271, 281–82 (7th Cir. 1987); Restatement (Second) of Torts § 875 (Am. L. Inst. 1979). Thus, judgments ordering restitution for different joint and several amounts, which the court has been told are common in this district, Clerk Resp. 10, create something of a legal conundrum because they divide a supposedly indivisible single harm into different amounts. This conundrum lies at the heart of the government's amended motion to clarify the restitution judgments. Gov't Am. Mot. to Clarify Restitution Order ("Mot."), ECF No. 397.

The details of the accounting method presently in use by the Clerk are not entirely clear on this record. The Clerk represents that, consistent with national policy promulgated by the Director of the Administrative Office of the United States Courts, payments toward joint and several restitution obligations in different amounts are allocated "proportionally according to each defendant's obligation" as they are received. Clerk Resp. 7. Under this accounting method, a defendant's balance for a joint and several restitution obligation can fall to zero before the defendant has paid the full amount stated in his or her individual judgment and before the victim has been fully compensated for the total loss amount stated in the judgment. *See id*. at 7.

## II. Analysis

The government argues that the Clerk's accounting method is inconsistent with the compensatory purpose of the Mandatory Victims Restitution Act (MVRA). *See* 18 U.S.C. §§ 3663A(a), 3664(h). The government contends that this court should adopt the reasoning of cases such as *United States v. Sheets*, 814 F.3d 256, 260–61 (5th Cir. 2016), and *United States v. Yalincak*, 30 F.4th 115, 124–25 (2d Cir. 2022). Both cases hold that where restitution orders hold defendants jointly and severally liable for different amounts, "the MVRA permits the Government to hold any individual defendant liable for as much as the court ordered as to that defendant, but the government may not collect more from all defendants together than will make

3

the victim whole." *Sheets*, 814 F.3d at 261 (citations omitted); *accord Yalincak*, 30 F.4th at 124–25.

The Clerk responds that the government has not shown that the court has jurisdiction to modify the judgments. Clerk Resp. 10–15. On the merits, the Clerk argues that *Sheets* and *Yalincak*, and district court decisions following them, are wrongly decided. The Clerk maintains that the government effectively asks the court to rewrite the judgments and read the word "joint" out of joint and several liability. *See id.* at 3. The Clerk also invokes the equitable doctrine of laches and draws an analogy to the *Chevron* doctrine, an administrative law doctrine concerning judicial deference to a federal agency's interpretation of an ambiguous statute. *See generally King v. Burwell*, 576 U.S. 473, 485 (2015); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984). In support of these arguments, the Clerk contends that the government has been aware of the accounting method used by the Director of the Administrative Office of the United States Courts since 1997 and has not raised an objection. The government disputes this as a factual matter. *See* Clerk Resp. 15–23; Gov't Reply 11–12; Gov't Suppl. Br. & Exs., ECF No. 448.

This court begins and ends with the Clerk's jurisdictional challenge. "Ordinarily, a court cannot issue a ruling on the merits 'when it has no jurisdiction' because 'to do so is, by very definition, for a court to act ultra vires.'" *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). For the reasons discussed below, the government has not carried its burden to identify a rule or statute conferring subject matter jurisdiction to resolve its motion. Accordingly, the court cannot reach the merits.

### A. Statutory Jurisdiction

"Federal courts are courts of limited jurisdiction." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (alteration omitted) (citing *Kokkonen v. Guardian Life Ins. Co. of*

*Am.*, 511 U. S. 375, 377 (1994)). Since "lower federal-court jurisdiction is further limited to those subjects encompassed within a statutory grant of jurisdiction . . ., 'the district courts may not exercise jurisdiction absent a statutory basis.' " *Id.* (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U. S. 546, 552 (2005)) (other internal citation and quotation omitted). Here, all appearing defendants have joined the Clerk's memorandum arguing that this court lacks jurisdiction to grant the government's motion. *See* Clerk Resp. 10–15; Sambalis Resp. 2; Gillard Resp. 1. As its sole proponent, the burden lies with the government to demonstrate subject matter jurisdiction. *United States v. Denedo*, 556 U.S. 904, 909 (2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).

For his jurisdictional challenge, the Clerk relies primarily on *United States v. Simon*, 952 F.3d 848 (7th Cir. 2020). *See* Clerk Resp. 10–15. The district court entered judgment against James A. Simon ("Simon") in 2010 and ordered him to pay restitution to several victims. *See id.* at 850. In 2016, shortly after Simon's release from prison, the government filed a motion to amend the restitution order to eliminate a victim payee that had disclaimed any interest in ongoing restitution. *Id*. The government also asked the district court to update the amount of restitution Simon owed to a second victim, decreasing his outstanding balance from $101,600 to $48,376. *See id.* at 850–51. The district court granted the motion one day after the government filed it without holding a hearing, and Simon filed *pro se* motions to reconsider, seeking an even lower amount, which the district court denied. *Id.* at 851. The Seventh Circuit held that Simon waived certain arguments by failing to make them in his *pro se* motions, and that others could and should have been made at sentencing and on direct appeal. *See id.* at 852. The Seventh Circuit further held that Simon had not timely appealed the district court's 2016 order modifying his restitution judgment. *Id*. at 852–53.

Simon also argued that he should be allowed to start again in the district court, raising all of his arguments. *See id.* at 853. But the Seventh Circuit explained that he had not "identified a mechanism to seek a substantive change in his restitution obligations." *Id*. (citation omitted). The *Simon* court explained, "Once a court sentences a criminal defendant, it has jurisdiction to continue hearing related issues only when authorized by statute or rule." *Id*. (quoting *United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003)). The Seventh Circuit surveyed several possibilities but concluded that a 28 U.S.C. § 2255 motion was unavailable, that the 14-day deadline to amend the judgment under Federal Rule of Criminal Procedure 35 had long since passed, and that Simon had not demonstrated a material change in financial circumstances needed to trigger the court's power to adjust a restitution payment schedule under 18 U.S.C. § 3664(k). *See id*. The *Simon* court further stated:

> Having said all this, we add that we are not without our doubts as to whether the district court had the authority to entertain the government's motion to amend the restitution order. *See United States v. Puentes*, 803 F.3d 597, 607 (11th Cir. 2015) ("every circuit court to consider this issue has indicated that a district court may only modify a mandatory restitution order through the means specified in § 3664(o)"); *see also id.* at 608 ("a district court may not modify a mandatory order of restitution unless one of the circumstances in § 3664(o) applies"); cf. *United States v. Pawlinski*, 374 F.3d 536, 540-41 (7th Cir. 2004) (emphasizing that federal courts do not have discretion to redirect restitution in a manner that ignores the statutory limits Congress placed on restitution orders). When we inquired about this at oral argument, the government's counsel indicated that it was relying on section 3664(k). But as is true with respect to Simon's challenges, section 3664(k) would appear to be inapplicable, as the government's motion was not premised on a material change in Simon's economic circumstances. In any case, Simon's attempt to challenge the order granting the government's motion comes too late.

*Simon*, 952 F.3d at 853–54 (footnote omitted).

Judge Hamilton joined the majority opinion in *Simon* and wrote separately to flag "a related issue that arose here and that may arise in other cases: the district court's authority to resolve post-sentencing disputes about restitution, particularly with respect to credit for payments made." *Id*. at 854 (Hamilton, J., concurring). In his concurrence, Judge Hamilton canvassed

6

18 U.S.C. § 3664, and certain cross-referenced statutes, in search of an authority to resolve administrative disputes concerning restitution administration, such as "a dispute about credits for payments." *See id.* at 854–56. He suggested that the best candidates might be the court's inherent authority, which he approached with "diffidence," *id.* at 855–56 (citations omitted), and § 3664(m)(1), which provides that: " 'An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title' or by 'all other available and reasonable means.' " *Simon*, 952 F.3d at 855 (Hamilton, J., concurring).

Under *Simon*, the party invoking the court's authority to resolve a post-judgment restitution administration dispute must identify a statute or rule allowing the court to act. 952 F.3d at 853. The Seventh Circuit has consistently required the identification of a specific grant of authority in cases where it has found that the district court possessed jurisdiction over a post-judgment restitution dispute. For example, *United States v. Lilly*, 206 F.3d 756, 762–63 (7th Cir. 2000), holds that "when restitution is one of the conditions of supervised release, the district court retains jurisdiction to determine a defendant's compliance with this condition." In his opinion, Judge Ripple carefully analyzed the governing procedural rules, Fed. R. Crim. P. 32.1, and the statute, 18 U.S.C. § 3583(e), permitting the court to modify or revoke a term of supervised release. *See id.* at 760–62. In the case at hand, however, all terms of supervision have expired, so another source of authority must be identified. *See id.*; *see also, e.g.*, *Goode*, 342 F.3d at 743 (holding that the defendant had shown a material change in his economic circumstances sufficient to invoke the district court's jurisdiction to clarify a restitution judgment under 18 U.S.C. § 3572(d)(3)).

The merits cases cited by the government do not move the needle on jurisdiction: the district court's jurisdiction was neither discussed nor litigated in *Sheets* and *Yalincak*. *See* Brs. for Appellants and Appellee, *United States v. Yalincak,* Nos. 20-1540, 20-1542, 20-2144 (2d Cir.) (jurisdictional statements and questions presented); Br. for Appellant and Letter from the Gov't dated Sept. 25, 2015, *United States v. Sheets*, No. 15-10555 (5th Cir.). "When a court resolves a case on the merits without discussing its jurisdiction to act, it does not establish a precedent requiring similar treatment of other cases once the jurisdictional problem has come to light." *Jezierski v. Mukasey*, 543 F.3d 886, 888 (7th Cir. 2008) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 & n.29 (1984) (other citations omitted)). Thus, *Sheets* and *Yalincak* weigh neither for nor against this court's jurisdiction to resolve the present motion, so the court analyzes whether the government has identified another source of statutory authority.

Consistent with *Simon*, *Goode*, and *Lilly*, the Clerk threw down the proverbial gauntlet in his jurisdictional briefing, canvassing the statutes discussed in *Simon* and explaining why he believes none authorizes the court to entertain the instant motion. *See* Clerk Resp. 10–15 & nn.32–33. The government makes no effort to counter the Clerk's statutory analysis, does not invoke the court's inherent authority, and, like Simon, points to no source of statutory authority authorizing this court to award the relief it seeks. *See* Gov't Reply 10–11; *see also Simon*, 952 F.3d at 853. Instead, the government cites one case, *United States v. Robers*, for the broad proposition that the "MVRA's overriding purpose is 'to compensate victims for their losses.'" *United States v. Robers*, 698 F.3d 937, 943 (7th Cir. 2012), *aff'd,* 572 U.S. 639 (2014) (quoting *United States v. Pescatore*, 637 F.3d 128, 138 (2d Cir. 2011)); *see* Mot. 1–4; Gov't Reply 10–11. That is of course true as a general matter. *See Dolan v. United States*, 560 U.S. 605, 612–13 (2010). But the appeal in *Robers* arose from the district court's sentencing decision, no post-

judgment proceeding had been initiated, and the opinion says nothing about jurisdiction. *See Robers*, 698 F.3d at 940–41. The government articulates no legal theory by which the MVRA's broad purpose grants this court jurisdiction to resolve this specific dispute. *See* Gov't Reply 10–11. The government's citation to *Robers* does not, therefore, carry its burden to show that this court possesses subject matter jurisdiction.

Citing no legal authority, the government contends that accepting its position does not "require altering the judgments but instead . . . enforcing the judgments as written." Gov't Reply 10–11. If anything, continues the government, the Clerk is seeking to rewrite the judgments in a manner inconsistent with the purposes of the MVRA. *Id.* at 11.

The government's position that it is not seeking a judgment modification is difficult to reconcile with the dictum from *Simon* quoted above. The Seventh Circuit expressed skepticism about the district court's authority to issue a 2016 order declaring how much the defendant owed in restitution, decreasing the defendant's outstanding balance by more than $50,000. *See Simon*, 952 F.3d at 851, 854. The government seeks not dissimilar relief here. It wants this court to declare how much restitution defendant Bronke owes and, by extension, how much restitution the other defendants owe. *See* Mot. 4; Gov't Reply 2–3. Thus, *Simon* appears to support the Clerk's position that the relief the government seeks is properly characterized as modifying the restitution judgment. Indeed, Judge Kendall recently adopted the Clerk's jurisdictional reasoning in full, including his contention that the relief the government seeks in its motion to clarify is properly characterized as a request for a judgment modification. *See* Min. Order & Tr. of Hr'g held May 25, 2022, at 2–3, *United States v. Murray*, No. 09-cr-144-9 (N.D. Ill. June 8, 2022) (transcript in this record at ECF No. 441-1).

9

Ultimately, this court need not decide whether the relief the government seeks is properly characterized as enforcement or modification of a judgment because the government has not identified a rule or statute authorizing the court to award either form of relief in the present posture of this case. As discussed above, *Robers* does not establish that the court may modify the judgments.

As for judgment enforcement, the "Attorney General [is] . . . responsible for collection of an unpaid fine or restitution." 18 U.S.C. § 3612(c). The "United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law . . . against all property or rights to property of a person," with certain exceptions. 18 U.S.C. § 3613(a); *see id.* § 3613(f). Although the government does not make this clear, by referencing a proceeding to enforce a judgment, it may be referring to state law or the Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. §§ 3201–06, which the MVRA expressly incorporates. 18 U.S.C. § 3664(m)(1)(A)(i).

The FDCPA requires the government to take specific procedural steps to initiate enforcement proceedings. *See* 28 U.S.C. § 3203(c) (requiring written application to a court to issue a writ of execution); *id.* § 3204(a) (requiring service of a motion for an installment payment order to be served either by certified mail or in the same manner as a summons); *id.* §§ 3205(b)(1) and (c)(3) (requiring the government to file an application for and serve a writ of garnishment); *see also, e.g.*, *United States v. Kollintzas*, 501 F.3d 796, 798 (7th Cir. 2007) (government-initiated FDCPA garnishment proceeding). For example, *Sheets* arose out of a contested garnishment proceeding initiated by the government. *See Sheets*, 814 F.3d at 258–59. Here, by contrast, the government has not, as far as the record shows, taken the procedural steps necessary to initiate one of the enforcement proceedings authorized in the text of the FDCPA.

10

*See* 28 U.S.C. §§ 3202–05. Nor is there any suggestion that the government has attempted to initiate collection proceedings under state law, such as by serving a citation to discover assets. *See, e.g.*, *United States v. Resnick*, 594 F.3d 562, 565–66 (7th Cir. 2010). And the government has not articulated a theory under which it can proceed under the FDCPA or state law without taking the procedural steps needed to initiate enforcement proceedings. *See* Gov't Reply 10–11.

Accordingly, the government has not carried its burden to show that this court has statutory authority to resolve its motion under either a judgment enforcement or modification theory.

### B. Article III Standing

In addition to the statutory issues discussed above, *Yalincak*, 30 F.4th at 131–32, raises an Article III standing question. The litigants have not briefed or argued standing. Nonetheless, because standing is a constitutionally required component of a federal court's jurisdiction, this court must raise standing on its own initiative if necessary. *See Arbaugh v. YH Corp.*, 546 U.S. 500, 506 (2006); *Steel Co.*, *supra*, 523 U.S. at 89–100. The constitutional standing doctrine is intended to ensure that the litigants have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962). As with other jurisdictional matters, the party invoking the court's jurisdiction, here the government, bears the burden to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (other citation omitted)). The doctrine of standing implements Article III by helping to ensure that cases present "a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (citing *Flast v. Cohen*, 392 U.S. 83, 96–97 (1968), and *Coleman v. Miller*, 307 U.S. 433, 460

(1939)); *see also United States v. Bernegger*, 797 F. App'x 270, 271–72 (7th Cir. 2020); *Yalincak*, 30 F.4th at 132 (to have standing, adverse parties must have "a direct stake in the outcome . . . [rather than being] concerned bystanders" (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986))).

Two defendants appealed in *Yalincak*. One had standing, and the other did not. The defendant with standing, Ayfer, filed a motion asking the district court to declare her restitution obligations satisfied. *Yalincak,* 30 F.4th at 117. Ayfer and the government took adverse positions on how much restitution she owed, a question in which she had an obvious personal stake. *See* 30 F.4th at 118. The second defendant, Hakan, did not file a motion of his own and appealed the district court's order denying Ayfer's motion. *Id.* The Second Circuit held that Hakan lacked standing, explaining that "the fact that Hakan is liable jointly and severally with Ayfer for a portion of [his restitution] amount does not change his own obligations." *Id.* at 132.

No appearing defendant here presently has a direct personal stake comparable to Ayfer's. Having received notice of the government's motion, neither the victim, First Tennessee Bank, nor defendant Bronke, has appeared to contest it. That is, neither the victim nor Bronke appear to be at issue with the government or the Clerk over how much restitution Bronke owes. The Clerk is at issue with the government, but the Clerk's standing has not been briefed. The two appearing co-defendants maintain that they are likely to have to pay a greater amount of restitution if the government's motion is granted. *E.g.*, Sambalis Resp. 2–3. The Second Circuit rejected similar arguments as to Hakan and concluded that he lacked standing. *Yalincak*, 30 F.4th at 132.

If a defendant, such as Bronke, were to contest the amount of restitution he owes through an appropriate means, such as in a garnishment proceeding, standing would likely not be an

issue. *See Sheets*, 814 F.3d at 258–59; *United States v. Sawyer*, 521 F.3d 792, 796–97 (7th Cir. 2008). However, on the present record and under the reasoning of *Yalincak*, it is not clear that the interpretative disagreement between the executive and judicial branches has ripened into a sufficiently concrete dispute which the court can resolve. *See generally* Gov't Suppl. Br. & Exs.

### III.  Conclusion

The controlling principle is this: "Once a court sentences a criminal defendant, it has jurisdiction to continue hearing related issues only when authorized by statute or rule." *Simon*, 952 F.3d at 853 (quoting *Goode*, 342 F.3d at 743). The Clerk and the defendants who have appeared have all argued that no rule or statute permits the court to award the government the relief it seeks in its amended motion to clarify restitution order. In response, the government has cited no statute, rule, or case law demonstrating that this court possesses the required statutory authority, and there are substantial questions, not adequately briefed, concerning Article III standing. *See* Gov't Reply 10–11. This is insufficient to carry the government's burden to show that this court has subject matter jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). Accordingly, and for the reasons stated, the government's amended motion to clarify restitution order is denied without prejudice for want of an adequate showing of subject matter jurisdiction.

Dated:  September 8, 2022                                  /s/
                                                                        Joan B. Gottschall
                                                                        United States District Judge